Matthew Shepard, OSB #105009
Law Office of Matthew G. Shepard
685 Church St NE, Salem, OR 97301
Telephone: (503) 385-0121
matt@mshepardlaw.com

Brady Mertz, OSB #970814
Brady Mertz, PC
685 Church St NE, Salem, OR 97301
Telephone: (503) 385-0121
brady@bradymertz.com

Efrem Lawrence, OSB #160471
Efrem Lawrence Law Firm
5 Centerpointe Dr Ste 400, Lake Oswego OR 97035
Telephone: (503) 719-6667
efrem@lawrencelegalfirm.com

*Attorneys for Plaintiff Finley Cidone*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| FINLEY CIDONE, an individual,<br><br>      Plaintiff,<br><br>  vs.<br><br>PINNACLE PROPERTY MANAGEMENT SERVICES, LLC, a foreign limited liability company, and BEL PORTLAND HOLDINGS LLC, a foreign limited liability company,<br><br>               Defendants. | CASE NO. 3:20-cv-01133-AR<br><br>PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT AND MEMORANDUM IN SUPPORT |

### MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff and Settlement

Class Representative Finley Cidone moves the Court as follows:

Class Counsel, on behalf of Plaintiff and the proposed Settlement Class, and Defendants

(together, the "Parties") have agreed to settle all claims of the proposed Settlement Class against

PAGE 1 -    PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
            SETTLEMENT AGREEMENT AND MEMORANDUM IN SUPPORT

Defendants, as more particularly set forth in the Settlement Agreement filed herewith as <u>Exhibit A</u> (the "Settlement Agreement").

The purpose and intent of all Parties to this proposed Settlement are to settle any and all claims of any type related to Defendants' utility billing practices; to terminate and extinguish any liability of the Defendants for all Released Claims of the Settlement Class Members; and to dismiss on the merits and with prejudice all claims of the proposed Settlement Class against Defendants.

The Parties now seek preliminary approval from this Court of the terms of the proposed Settlement Agreement, including:

a. Preliminary approval of the proposed Settlement memorialized in the proposed Settlement Agreement as being fair, adequate, and reasonable, such that notice to the Class should be provided pursuant to the proposed Settlement Agreement;

b. Certification of the Settlement Class as defined in the proposed Settlement Agreement for settlement purposes only;

c. Appointing Plaintiff as the Class Representative;

d. Appointing Plaintiff's Counsel as Class Counsel;

e. Approval of the form, content, and manner of the Class Notice, finding them to constitute the best practicable method under the circumstances and to satisfy Rule 23, due process and all other applicable laws;

f. Appointment of the Angeion Group as the Settlement Claims Administrator (the "Settlement Claims Administrator"); and

g. Approving the Parties' proposed schedule for: (i) notice to the Class; (ii)

PAGE 2 -    PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT AGREEMENT AND MEMORANDUM IN SUPPORT

opting out of the Settlement; (iii) submitting objections; and (v) the Final

Approval Hearing.

A proposed preliminary approval order is filed herewith as Exhibit B.

<b>MEMORANDUM IN SUPPORT</b>

## I.    INTRODUCTION

Plaintiff, Finley Cidone, is an Oregon residential tenant who filed this class action lawsuit against the Defendants, his landlord and property manager, alleging that they had violated certain statutory utility billing requirements under the Oregon Residential Landlord and Tenant Act (the "ORLTA."). After over two years of litigation, the Parties have reached a proposed settlement (the "Settlement."). They have done so after exchanging over 191,000 pages in discovery; briefing, arguing, and receiving a ruling on key issues; and engaging in settlement negotiations, including with the assistance of an experienced private mediator. The Settlement provides significant monetary relief to the class, and avoids the substantial risks and time investments of trial and appeal.

Under the Settlement, Defendants agree to (1) certification of a settlement class; (2) provide substantial and meaningful compensation to the Plaintiff and the putative class in the amount of $2,000,000 in cash; and (3) consent to the designation of Plaintiff as the Class Representative, and his attorneys, Efrem Lawrence, Matthew Shepard, and Brady Mertz as Class Counsel. Defendants have also agreed to separately cover up to $100,000 of administration costs. Plaintiff requests an incentive award of $3,000 for his diligence and participation in the advancement of the interests of the Class. Class Counsel will also request the approval of an award of Class Counsel's attorney fees from the Total Settlement Fund not to exceed 1/3 the settlement fund as well as recovery of their reasonable costs and expenses.

The Class Representative and Class Counsel are fully aware of the strengths and weaknesses of the claims at issue and have evaluated the fairness of its resolution at this time, weighed against the risks of continued litigation. The Settlement appropriately balances the Plaintiff's objective of enforcing and ensuring compliance with the ORLTA, while protecting against the risks inherent to continued litigation. Plaintiff and Class Counsel believe that the Settlement is in the best interests of the Class given the factual and legal framework of the case and, based on their extensive experience litigating tenant utility charge actions, believe its terms are fair, reasonable, and adequate.

## II.    BACKGROUND

**A.    The Plaintiff's Allegations.** Plaintiff is the Defendants' residential tenant, whom Defendants charged, or caused to be charged, for his use of utilities consumed at his dwelling unit. Plaintiff alleges that Defendants failed to comply with Oregon's utility billing statute, ORS 90.315, by: (1) failing within 30 days after receipt of the utility provider's bill or service provider's bill to bill tenants in writing; (2) failing to provide with tenants' utility bills a copy of the provider's bill or a statement that they may inspect the provider's bill at a reasonable time and place and that they may obtain a copy of the provider's bill by making a request to the landlord during the inspection and upon payment to the landlord of the reasonable cost of making copies; (3) failing to provide tenants an explanation of the manner in which the utility provider or service provider assessed their utility or service charges in either the rental agreement or any utility bill; (4) requiring tenants to pay for utilities and services without explaining the manner in which the charge for utilities or services was allocated among tenants; and alternatively; (5) charging a "Utility Billing Fee" beyond the cost of the utility or services billed to Defendants.

Plaintiff sought statutory damages of "one month's periodic rent" for each of the alleged violations under ORS 90.315(4)(f), and alternatively $300 for each Utility Billing Fee. Defendants denied Plaintiff's allegations and contested his requests for relief.

**B.      The Procedural Background.** On November 19, 2019, Plaintiff filed this action in Multnomah County Circuit Court seeking only injunctive relief and class certification. Then on December 15, 2019, he sent notice of his intent to amend that Complaint to seek money damages under Rule 32(H) of the Oregon Rules of Civil Procedure. In 2019 and early 2020, Plaintiff served several discovery requests on the Defendants.

On June 15, 2020, Plaintiff amended his Complaint and sought money damages, and on July 13, 2020, Defendant Pinnacle Property Management Services, LLC ("Pinnacle") removed this action to the United States District Court for the District of Oregon.

On September 28, 2020, Defendants moved for judgment on the pleadings seeking to (1) dismiss all claims arising before November 19, 2018, as time-barred under the one-year statute of limitations notwithstanding the Complaint's invocation of the discovery rule, and (2) limit recovery of statutory damages under ORS 90.315(4)(f) to a single month's rent or twice the amount wrongfully charged no matter how many utility violations occurred [ECF Nos. 8 and 12]. Plaintiff opposed these motions [ECF No. 16], and Pinnacle replied [ECF No. 21].

Oral argument on the motion for judgment on the pleadings was held on May 20, 2021, and on the following day, the Court denied Defendants' motion dismissing the claims arising before November 19, 2018, but granted Defendants' motion limiting recovery of damages to one month's rent or twice the amount wrongfully charged as a matter of law under ORS 90.315(4)(f) [ECF No. 35]. Plaintiff objected to the findings and recommendation limiting damages [ECF No. 37], and the Defendants objected to the findings and recommendation allowing claims arising

before November 19, 2018 to survive [ECF No. 38]. On September 10, 2021, Judge Hernandez adopted the Magistrate Judge's findings and recommendations in full [ECF No. 45].

In the midst of this motion practice, Defendants produced over 191,000 pages in discovery, and Plaintiff had to move and receive an order requiring production of relevant documents that non-party's refused to permit Pinnacle to produce [ECF No. 33].

**C.    The Mediation/Settlement Process.** The Parties began to engage in settlement discussions while Defendants' Motion for Judgment on the Pleadings was under advisement. These initial settlement discussions led to the Parties engaging the services of Eric English of Resolution Strategies LLP. The Parties each had several pre-mediation meetings with Mr. English during which time they discussed the strengths and weaknesses of their case, and the considerations for possible resolution and settlement. On February 28, 2022, the Parties held a full-day mediation session during which they agreed to the principal terms of settlement, the total settlement fund, the class definition, and the class period.

Thereafter, the Parties negotiated the rest of the terms of the agreement, which is now submitted to the Court.

## III.    SUMMARY OF KEY SETTLEMENT TERMS

**A.    The Class Definition.** The proposed settlement class (the "Class") includes: All persons who executed a written rental agreement as a tenant for a dwelling unit within any Oregon apartment complex to which YES Energy Management, Inc. furnished at least one utility bill at a time when the property was managed by Pinnacle, from January 1, 2016 to February 29, 2020.

The class excludes (i) Defendants; (ii) any person who was an officer, director, or partner of Defendants during the Class Period and any members of their immediate family; (iii) any

parent, subsidiary, or affiliate of Defendants; (v) any firm, trust, corporation, or other entity in which Defendants or any other excluded person or entity has, or had during the Class Period, a controlling interest; (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded persons or entities; and (vii) any Judge or Magistrate Judge to whom the Action is assigned and any member of those Judges' staffs or immediate family members.

**C.     The Settlement Consideration.**  The Total Settlement Fund is a lump sum of $2,000,000. Settlement Agreement ¶ 15. This amount includes amounts to be awarded to Class Counsel for attorney fees and expenses, and an incentive award to the Plaintiff. In addition, Defendants will separately pay up to $100,000 for the costs of administration.

**D.     Release of Claims.** Upon the Judgment Date, the Class Representative and Class Members who have not opted out will release all claims as set forth in the Settlement Agreement, including all claims arising out of or based upon the allegations, transactions, facts, matters or occurrences, representations, or omissions involved, set forth, or referred to in the Complaint or the Amended Complaint, and that otherwise relate to utility billing practices during the Class Period. Settlement Agreement ¶ 42.

**IV.     NOTICE OF THE SETTLEMENT**

Upon entry of the Preliminary Approval Order, Class Counsel and Defense Counsel will finalize the list of class members from Pinnacle's records, and within 60 days of the later of either entry of the Preliminary Approval Order or Class Counsel's identification of the tenancies, will send that information to the Settlement Claims Administrator. Settlement Agreement ¶ 13. The Settlement Class Members' last known mailing and e-mail addresses will be sent along with the list. The Settlement Claims Administrator will then have 60 days to issue the Class Notice.

For those Settlement Class Members who still reside at a property managed by Pinnacle, the Settlement Claims Administrator will mail a physical copy of the Class Notice. For those Settlement Class Members who no longer reside at a property managed by Pinnacle, the Settlement Claims Administrator will perform investigations to identify current mailing address, and mail to that address. The Settlement Claims Administrator will then e-mail the Class Notice to any Settlement Class Member whose address cannot be identified, or whose mailed notice are returned as non-deliverable. Settlement Agreement ¶ 27. The Settlement Claims Administrator will also maintain a website that will make the Amended Complaint, Class Notice and Settlement Agreement publicly available. Settlement Agreement ¶ 29

## V.    ANALYSIS

**A.    The Proposed Settlement Should be Approved by the Court.** The Ninth Circuit has adopted a "strong judicial policy" favoring settlement of class action lawsuits. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Lane v. Brown*, 166 F. Supp. 3d 1180, 1188 (D. Or. 2016). Preliminary approval, which is what Plaintiff seeks now, is not a final and dispositive assessment of the fairness of the proposed settlement, but rather a determination as to whether it "falls within the range of possible approval" or "within the range of reasonableness." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007). When granting preliminary approval, courts generally order notice be given to the absent class members and schedules a final approval and fairness hearing for those class members to be heard.

In order to analyze the fairness of a proposed settlement, courts "must generally weigh" the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout

the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage

of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

participant; and (8) the reaction of the class members of the proposed settlement. *Churchill Vill.,*

*L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

      As demonstrated throughout this motion, these factors weigh heavily in favor of

approving the Settlement. Although Plaintiff's case is strong, the amount offered in settlement is

significant in light of the fact that the amount of actual damages, if any, suffered by the

Settlement Class Members is very low. By comparison, in a similar case in Multnomah County

Circuit Court, Judge Kelly Skye approved a settlement of $1,000,000 for 3,957 tenancies.

*Messner v. Cambridge Real Estate Services Inc.*, Multnomah County Case No. 19CV28815.

That settlement was in the form of a rent credit for current tenants, and checks for former

tenants. Here, the proposed settlement is $2,000,000, and the Parties expect that there will be

even more tenancies than were at-issue in *Messner*, which Class Counsel are still in the process

of identifying as provided in Section 17(b)(ii) of the Settlement Agreement. There are no rent

credits, and all Settlement Class Members will be distributed a check commensurate with the

strength of their claim in a manner agreed to by the Parties.

      The Parties have exchanged voluminous discovery giving counsel for the Parties a good

sense of the strength of their cases; Class Counsel are experienced both in ORLTA cases in

general and ORS 903.15 cases in particular; and the Parties are well-versed in prosecuting class

action matters. In addition, if the Parties were to fully litigate this matter, including possible

appeals on significant legal issues, this case could drag on for several more years before any

class member receives a payment, assuming they even receive one at all.

1.      **The Proposed Settlement Surpasses the Additional Considerations for Pre-Certification Settlements.** When proposed counsel are experienced and support the settlement, which was the result of arm's-length negotiations and relevant discovery has been conducted, there is an initial "presumption that the agreement is fair." *Smith v. Am Greetings Corp.*, 2015 WL 4498571, at *6 (N.D. Cal. July 23, 2015); *Nobles v. MBNA Corp.*, 2009 WL 1854965, at *6 (N.D. Cal. June 29, 2009). The proposed Settlement here was reached only after experienced counsel engaged in extensive discovery, and engaged in arm's-length negotiations with the help of an experienced mediator.

However, where, as here, parties to a putative class action have reached a proposed settlement before the court has granted class certification, the court is to apply, "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)," and the court, "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotations marks omitted); *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 947 (9th Cir. 2011).

The three signs of a collusive settlement are: (1) class counsel receives a disproportionate distribution of the settlement, or the class receives no monetary distribution but counsel is amply rewarded; (2) the parties negotiated a "clear sailing" provision providing for attorney fees to be paid to Class Counsel separate and apart from the class recovery to which the defendants will not object; and (3) unclaimed class recovery payments will revert to the defendant(s). *In re Bluetooth*, 654 F3d at 947.

The proposed Settlement has none of these three signs. All of the class members will

receive an objectively determined *pro rata* payment without having to file any sort of claim. Class Counsel's attorney fees will be awarded out of the common fund and approved by the Court. Class Counsel have agreed to limit their petition for an award of attorney fees to no more than 33% of the common fund, which percentage is frequently awarded in funds of this size. Any uncashed payments to Class Members will be either redistributed amongst the Settlement Class Members, or paid to a *cy pres* non-profit recipient.

**2.      The Settlement does not Grant Preferential Treatment to the Class Representative, and Fairly Allocates the Settlement Funds.** Class action case law recognizes that class members' individual recoveries may differ based on the objective strengths and weaknesses of their claims. In fact, "approval of a plan of allocation of settlement proceeds in a class action ... is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Oracle Sec. Litig*., 1994 WL 502054, at *l-2 (N.D. Cal. June 16, 1994) (citing *Class Plaintiffs. v. Seattle*, 955 F.2d at 1284-85). It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits. *In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036 (N.D. Cal. 2008) (internal citations omitted).

Here, as explained more thoroughly below, some class members' tenancies ended before November 19, 2018, which date is one year prior to the filing of this action. The Defendants pleaded that those claims are time-barred under the applicable one-year statute of limitations. ORS 12.125. However, Plaintiff pleaded reliance on the discovery rule to include all claims that arose on or after January 1, 2016 and before November 19, 2018 of which the class members neither knew nor in the exercise of reasonable care should have known. Against Defendants' Motion for Judgment on the Pleadings, the Court ruled that the discovery rule does apply to these

PAGE 11 -   PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT AGREEMENT AND MEMORANDUM IN SUPPORT

claims, and they need not be stricken from the Complaint. However, significant issues in

applying the discovery rule to rescue these claims exist in this matter because the alleged

violations are disclosure violations, which Defendants could credibly argue, *inter alia*, would be

reasonably discoverable because the alleged disclosure was patent on the very utility bills

actually paid by the tenants. Therefore, the plan of allocation of the total settlement fund

appropriately distinguishes between those class members whose tenancies ended on or before

October 31, 2018, and who must rely on application of the discovery rule, and those whose

tenancies ended after October 31, 2018[1] (or are ongoing), and who therefore do not face this

issue.[2] Those Settlement Class Members' claims would not rely on the successful application of

the discovery rule will therefore receive a distribution at ten times the rate of those whose claims

would rely on the successful application of the discovery rule.

　　　　To arrive at this weighing of claims, Plaintiff's counsel, with the benefit of discovery,

have considered the likelihood of success in applying the discovery rule to the claims that require

it. Plaintiff's counsel's experience is based directly on prior litigation, both of ORLTA cases, and

of ORS 90.315 utility billing cases in particular. For example, Matthew Shepard has (i)

prosecuted eight ORS 90.315 class actions, certified or putative, (ii) prosecuted at least 24 non-

class action ORS 90.315 actions, and (iii) represented or advised dozens of other landlords and

tenants regarding ORS 90.315 in matters in which no action being filed. *See* Shepard Declaration

¶ 3. Brady Mertz has likewise (i) prosecuted and defended other ORS 90.315 actions, including

---

[1] October 31, 2018 was chosen as the line of demarcation because the utility charges at issue are monthly charges,
and therefore, any tenancies that ended between November 1, 2018 and November 18, 2018 would still be charged a
utility charge for that entire month, and therefore, would still be within the one-year statute of limitations for the
ORS 90.315 claim.

[2] Plaintiff Finley Cidone's tenancy began prior to October 31, 2018, and is ongoing as the filing of this Motion

as Plaintiff's counsel for nine ORS 90.315 class actions, certified or putative, including one to verdict, *Hathaway v. B&J Property Investments, et al*, Marion County Circuit Court Case No. 13C14321, in which he obtained a judgment in the amount of $4.8 million and (ii) represented or advised dozens of other landlords and tenants regarding ORS 90.315 in matters in which no action was filed. *See* Mertz Declaration ¶ 4.

Thus, this plan of allocation is informed by and based on practical real-world experience by attorneys who regularly decide which tenant cases to take, and whether they would be willing to do so on a contingency basis and carry the costs of litigation, after consideration of the likelihood of success. Because the plan of allocation is based on an informed and knowledgeable evaluation of the strengths and weaknesses of the individual claims, it is not unduly or improperly preferential.

**B.    The Proposed Settlement Class Meets the Standard for Class Certification Under Rule 23.** As part of granting preliminary approval of this class action settlement, a court must determine whether the proposed class can be certified. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). In order to certify a class, a court must find that:

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)    The representative parties will fairly and adequately protect the interests of the class. Fed R. Civ. P. 23(a).

In addition, a court must find that the proposed settlement class satisfies one of the requirements of the subdivisions of Rule 23(b). Here, the Plaintiff seeks certification under Rule

23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual class members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

  **1.**  **The Class is Sufficiently Numerous.** A class must be so numerous that joinder is impracticable. "Impracticable" does not mean impossible, but only that joinder would be difficult or inconvenient. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). In the District of Oregon, "approximately forty members is sufficient to satisfy the numerosity requirement." *Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307, 314 (D. Or. 2017) (citations omitted). Here, Plaintiff alleges that the Class exceeds 5,000 members. *First Amended Complaint* ("FAC") ¶ 17. Discovery has confirmed this. *See* Shepard Declaration ¶ 4. Therefore, the numerosity requirement is met.

  **3.**  **There are Common Issues of Law and Fact.** The requirement of Rule 23(a)(2), often referred to as the "commonality" requirement, requires "plaintiffs to 'demonstrate that the class members have suffered the same injury,' not merely violations of the 'same provision of law.'" *Parsons v. Ryan*, 754 F.3d 657, 674–75 (9th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Indeed, "plaintiffs' claims 'must depend upon a common contention' such that 'determination of their truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* (internal alterations omitted). "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2). *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). Rule 23(a)(2)'s inquiry – whether "there are questions of law or fact common to the class" – has been, "construed permissively." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981

(9th Cir. 2011). Accordingly, the commonality requirement is, "a low hurdle easily surmounted." *Pecover v. Elec. Arts Inc.,* 2010 WL 8742757, at *13 (N.D. Cal. Dec. 21, 2010).

Here, the claims of the Settlement Class center around the same facts: Defendants' charging of utility charges to their tenants, and the Defendants' alleged failure to provide their tenants with a written bill that included certain statutorily required disclosures. *See* First Am. Compl. [Dkt. 1 ¶ 18]. Discovery has confirmed that Pinnacle, as most property managers who operate at scale, billed the Settlement Class Members consistently across properties. *See* Shepard Declaration ¶ 4. And similarly, resolution of these claims would depend upon a common question: whether the utility bills furnished to the Settlement Class Members violated the various sections of ORS 90.315.

Here, questions of fact and law predominate, and this requirement is easily met.

**5.     The Class Representative's Claims are Typical of the Settlement Class Members.**  To satisfy the typicality requirement, a plaintiff must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A class representative's claims are sufficiently typical if they are "reasonably coextensive with those of absent class members." To determine whether a class representative's claim is typical, the court should focus "'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff." *Lozano v. AT&T Wireless Services, Inc.* 504 F3d 718, 735 (9th Cir. 2007) (quoting *Rosario v. Livaditis*, 963 F2d 1013, 1017 (7th Cir. 1992)).

Here, Plaintiff shares a legal theory with all absent class members because he has brought a statutory claim and seeks statutory damages based upon uniform practices by Defendants. Also, the factual basis for his claim centers on Pinnacle's alleged failure to comply with certain statutory disclosures, and Pinnacle's practices were generally uniform for all of the Settlement

Class Members. Because Pinnacle, a large property manager, has economies of scale to conduct its property management operations, its relevant conduct is uniform against Plaintiff and the class. Therefore, the requirement for typicality is met.

**7.      The Class Representative and Class Counsel Adequately Represent the Interests of the Class.** The last prerequisite under Rule 23(a) is that the, "representative parties will fairly and adequately protect the interests of the class." To determine whether a named plaintiff will adequately represent a class, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis.*, 657 F3d at 985 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Here, the named Plaintiff has no antagonism or conflict with the Settlement Class Members. He has prosecuted this action for over 2.5 years in order to both ensure compliance with the ORLTA and recover statutory damages on behalf of himself and the absent class members.

Similarly, Class Counsel is experienced in class litigation. Both Messrs. Shepard and Mertz have been granted class certification in other matters over the defendants' opposition. They have also prosecuted numerous ORLTA utility billing actions, both individual cases and class actions. Mr. Mertz has prosecuted one such claim to verdict.

**D.      The Requirements of Rule 23(b)(3) are Satisfied.** In addition to satisfying the prerequisites under Rule 23(a), a court must be satisfied that one of the three requirements of Rule 23(b) are met. This proposed settlement class satisfies the requirements under Rule 23(b)(3), which are that, (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to

PAGE 16 -   PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
            SETTLEMENT AGREEMENT AND MEMORANDUM IN SUPPORT

other available methods for fairly and efficiently adjudicating the controversy."

To determine these two questions, the court may consider: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)

1.    **Common Questions of Fact or Law Predominate**.  This inquiry, "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod*, 521 US at 623. This test is different from the commonality prerequisite under Rule 23(a), and requires that common questions "present a significant aspect of the case and [] can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F3d at 1022 (quoting 7A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §1778 (2d ed 1986) ("the proper standard under Rule 23(b)(3) is a pragmatic one")). This is not however a requirement that no individual issues exist, but rather that class common issues *predominate*. *See Clark v. Bonded Adjustment Co.*, 204 FRD 662, 666 (E.D. Wash 2002).

"More important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F3d 1125, 1134 (9th Cir. 2016). In fact, predominance may be established on the basis of a single common issue, when it is central to the claim. *In re Hyundai & Kia Fuel Econ. Litig*., 881 F.3d 679, 708 (9th Cir. 2018).

Here, all of the most critical questions are common. First, the question of fact, whether Defendants properly provided a written disclosure on the tenants' utility bills that they had the right to review, inspect and copy the utility providers' bills applies to all Settlement Class Members. The Court is able to determine this issue from the four corners of the utility bills themselves. In addition, because damages are based on the monthly rent charges, individual inquiry into actual damages is unnecessary, and the Court can determine damages based solely on the rental documents. In addition, the critical legal issues raised in Defendants' Motion for Judgment on the Pleadings, including whether damages stack on a per violation basis, or just once, are common to all Settlement Class Members.

**2.     The Class Action Mechanism is Superior to Any Other Method of Adjudication**.  The class action mechanism is superior to any other method of adjudication for several reasons. First, as explained above, the statutory nature of the claims and damages, as well as the fact that these claims are based on the four corners of documents without any scienter requirements, make them especially suited for representative adjudication. Second, it appears that no absent class members have yet filed any individual claims against Defendants for these claims, despite the applicable statute of limitations having already passed. Plaintiff however, has prosecuted this action to a proposed settlement on behalf of a putative class. Third, the individual amounts at stake are small relative to the costs of litigation. Fourth, if pursued individually, the individual lawsuits would risk different decisions from different judges on the merits of the case and the key legal issues.

**E.     The Proposed Plan of Allocation is Fair and Reasonable.**  Approval of a plan of allocation of settlement proceeds in a class action is governed by the same standards as the settlement as a whole – the plan of allocation must be fair, reasonable and adequate. *In re*

PAGE 18 -   PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT AGREEMENT AND MEMORANDUM IN SUPPORT

*Omnivision Techs.*, 559 F. Supp. 2d at 1045. "When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'" *Scott v. ZST Digital Networks, Inc*., 2013 WL 12126744, at *7 (C.D. Cal. Aug. 5, 2013) (quoting *In re Global Crossing Sec. & ERISA Litig*., 225 F.R.D. 436, 462 (S.D.N.Y. 2004)).

Because the monthly utility charges that form the basis of Plaintiff's claim are charged in common to all the tenants who are members of a single rental agreement for a dwelling unit, the damages in these utility billing actions should be awarded in common to all members of a particular tenancy. Therefore, counsel for the Parties will determine how many tenancies existed during the class period as well as determine the last monthly rent amount charged to each tenant. To determine these data, counsel are examining Pinnacle's internal rent roll spreadsheets and the rental agreements.

Rent rolls are used to track both occupancy and rent collection for each separate dwelling unit for each month. A tenancy begins in the first month a particular Settlement Class Member's name is first entered into the "Name" column for a particular dwelling and ends on the last month that same name is in the same "Name" column. Because the rent rolls do not list every person who signed the rental agreement, counsel will use additional records to identify other tenants, and therefore Settlement Class Members, who will collectively form a "tenancy." Further details regarding the procedure agreed to by counsel for the Parties is found in Section 17(b).

Despite the great number of tenancies involved in this matter, Class Counsel and Defense Counsel have agreed to a detailed plan of *pro rata* distribution of the settlement proceeds. Those tenancies which ended prior to October 31, 2018 ("Group 1 Tenancies") will each be allocated a

share equal to the last monthly rent amount charged to that tenancy. Each tenancy's share

amount will then be split evenly among all of the Settlement Class Members within that tenancy.

The tenancies who still exist or who ended after October 31, 2018 ("Group 2 Tenancies")

will be allocated a share equal to the last monthly rent amount charged to that tenancy multiplied

by ten (10). Each tenancy's share amount will then be split evenly among all of the Settlement

Class Members within that tenancy.

All of the shares will then be summed together, which resulting figure will be the "Total

Shares." Each Settlement Class Member's share will then be divided by the Total Shares. The

resulting fractions will be multiplied by the Net Settlement Fund.

Settlement Class Members need not file any claims to receive a payment, and all

Settlement Class Members who do not opt out will receive a settlement payment.

This *pro rata* allocation is the best approximation of each individualized Settlement Class

Members' claim, because the statutory damages sought here are based on the amount of rent

charged to the tenancy, and because the utility charge is a common charge among all the tenants

to a tenancy. Furthermore, as shown in Section V(A)(2), above, the weighing of share allocation

between Group 1 Tenancies and Group 2 Tenancies is based on Plaintiff's counsel's experience

in evaluating and litigating these claims on an individual basis. The plan of allocation has a

reasonable basis and should be approved.

### F.    The Proposed Settlement Claims Administrator Should be Approved.

Plaintiff and Class Representative requests the appointment of the Angeion Group ("Angeion")

as Settlement Claims Administrator. Angeion will be responsible for establishing a class website,

mailing notice to the absent class, receiving and cataloguing request for exclusion from the class,

and distributing the settlement fund.

Angeion is a leading class action administration firm whose management team has collectively overseen more than 2,000 class action settlements and distributed over $15 billion to class members. *See* Exhibit E, Declaration of Steven Weisbrot ("Weisbot Declaration"), ¶ 9. Its executives regularly teach continuing legal education courses regarding court-approved notices and administration programs, write articles for reputable publications, and speak at conferences throughout the country. *See Id.* ¶ 3. More information regarding Angeion's qualifications is available in the supporting declaration provided by Steven Weisbrot, President and Chief Executive Officer at Angeion.

**G.     The Form and Method of Notice Should be Approved.** Rule 23 requires notice of a proposed class action settlement be "direct[ed] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). In addition, Rule 23(c)(2) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The rule further allows for notice by "one or more" of "United States mail, electronic means, or other appropriate means." Fed R. Civ. P. 23(c)(2)(B). "Although that notice must be reasonably certain to inform the absent members of the plaintiff class, 'actual notice is not required.'" *Ontiveros v. Zamora*, 303 F.R.D. 356, 367 (E.D. Cal. 2014) (quoting *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994)).

A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill.,*, 361 F.3d at 575. By rule, the notice must—and the notice proposed here and attached as Exhibit B to the Settlement Agreement does—state the following clearly and concisely and in plain, easily understood language: (1) the nature of the action

(Notice at 3-4); (2) the definition of the class certified (Notice at 4); (3) the class claims, issues, or defenses (Notice at 3-4); (4) that a class member may enter an appearance through an attorney if the member so desires (Notice at 6); (5) that the Court will exclude from the class any member who requests exclusion (Notice at 5-6); (6) the time and manner for requesting exclusion (Notice at 5-6); and (7) the binding effect of a class judgment on members under Rule 23(c)(3) (Notice at 7).

The Parties' proposed method for providing notice to the Settlement Class Members constitutes the best practicable method under the circumstances. Under that method, the Settlement Claims Administrator will send the notice via first class U.S. Mail, postage prepaid to the Settlement Class Members. *See* Weisbrot Declaration, Ex. E ¶ 13. The Settlement Claims Administrator will utilize both the address provided by Defendants' records, as well as the National Change of Address database to obtain updated and more recent addresses for Settlement Class Members. *Id.* ¶ 14. The Settlement Claims Administrator will re-mail any notices returned it by the post office to any updated address listed on the return envelope, and will employ skip tracing for all notices that "bounce back" without an updated address. *Id.* ¶ 15-16. Lastly, for those Settlement Class Members for whom the Settlement Claims Administrator cannot locate a current mailing address, the Settlement Claims Administrator will e-mail the notice. *Id.* ¶ 17.

The Settlement Claims Administrator will also establish and maintain a case-specific website where general information, relevant deadlines and updates and case documents will be available. *Id.* ¶ 18. The website will have a "Contact Us" page where Settlement Class Members can update the Settlement Claims Administrator with current e-mail addresses. *Id.* ¶ 18. Lastly, the Settlement Claims Administrator will maintain a toll-free hotline that will provide automated information to Settlement Class Members at all hours of the day. *Id.* ¶ 19.

The Court should approve both the proposed form and method of notice as satisfying the requirements of Rule 23 and due process as they represent the best practicable notice under these circumstances. *Silber v. Mabon*, 18 F3d 1449, 1454 (9th Cir. 1994).

**H.    The Court Should Appoint Class Counsel.** Rule 23 requires the court to appoint class counsel that will fairly and adequately represent the class. In appointing class counsel, the court must consider (1) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). In addition to those four considerations, the court "may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Matthew Shepard, Brady Mertz, and Efrem Lawrence seek to be appointed Class Counsel. Messrs. Shepard and Mertz are prosecuting numerous other ORLTA utility billing class actions, and have successfully resolved two through final approval, including one in which class certification was granted over opposition. Matthew Shepard has prosecuted dozens of individual ORLTA utility charge cases, including one before the Oregon Court of Appeals. Brady Mertz has been appointed class counsel in previous federal class litigation, including *Brunelle v. My Pillow, Inc.*, 3:16-cv-02007-AC, and *Walters v. Vitamin Shoppe, Inc*, 3:14-cv-01173-PK, and as mentioned earlier, prosecuted one class action case involving ORS 90.315 violations in Oregon to Judgment. Efrem Lawrence is experienced in litigation in Oregon state and federal courts. *See* Shepard Declaration ¶¶ 2-3; *See* Mertz Declaration ¶¶ 2-3.

Messrs. Shepard, Mertz and Lawrence have made appropriate investigation of this matter, have litigated key issues, and have negotiated a settlement, believed to be the largest of its kind involving ORS 90.315 violations, which provides considerable monetary relief to all Settlement Class Members. The Court should appoint Messrs. Shepard, Mertz and Lawrence as class counsel.

## VI.    PROPOSED SCHEDULE OF EVENTS

The proposed Preliminary Approval Order, once entered, would certify this action as a class action for settlement purposes and direct notice to the absent class members regarding the settlement, as well as set in motion several dates and deadlines for the Parties, Class and Defense Counsel, the Settlement Claims Administrator, and absent class members. The Parties have agreed to and proposed the following schedule.

| Date | Event |
| --- | --- |
| Within sixty (60) days of the later of either the Preliminary Approval Date or Class Counsel's identification of the tenancies | Class Counsel and Defendants' Counsel provide class member list to Settlement Claims Administrator |
| No later than sixty (60) days following receipt of the class member list from Class and Defense Counsel | Settlement Claims Administrator will establish class website and mail notice to class members by first class mail |
| One Hundred and Fifty (150) days after entry of the Preliminary Approval Order | Due date for filing of Class Counsel's papers in support of final approval of the Settlement and papers in support of the request for an award of attorneys' fees and expenses |

| One Hundred and Eighty (180) days after entry of the Preliminary Approval Order | Due date for postmark or delivery of requests for exclusion and due date for delivery and filing of objections and intents to appear at the Final Approval hearing. |
|---|---|
| To be set by the Court within sixty (60) days of the Objection and Opt-Out Deadline | Final Approval Hearing |

This schedule is similar to others utilized in class action settlements and provides due process to the Settlement Class Members notifying them of their rights regarding the settlement, including their rights to opt-out or object. The Parties request the Court to schedule the Final Approval Hearing between two hundred and ten (210) and within two hundred and forty (240) days of entry of the Preliminary Approval Order in order to allow sufficient time for the Parties, Settlement Class Administrator and absent class members to file any motions, briefing or other materials they may deem appropriate or helpful regarding final approval of the settlement.

VII.    **CONCLUSION**

Counsel for the Parties have reached this settlement after exchanging voluminous discovery and motions practice on the key issues that drive resolution. The Court need not now give final approval to this Settlement, but merely must rule as to whether the Settlement is fair, reasonable and adequate. If it does so, notice of the terms of the settlement will be provided to the Settlement Class Members, and a Final Approval Hearing will be scheduled for the Court to make the final decisions regarding (1) approval of the settlement, (2) certification of the Settlement Class, (3) approval of the plan of allocation, (4) Class Counsel's request for attorney fees and expenses, (5) entry of the Final Judgment and Order and (6) other matters the Court may deem appropriate.

DATED: July 1, 2022.

*/s/ Matthew G. Shepard,* OSB 105009
685 Church St. NE, Salem, OR 97301
Telephone: 503-385-0121
matt@mshepardlaw.com

/s/ Brady Mertz, OSB 970814
Brady Mertz, PC
685 Church St. NE, Salem, OR 97301
Telephone: (503) 385-0121
brady@bradymertz.com

/s/ Efrem Lawrence, OSB 160471
Efrem Lawrence Law Firm
5 Centerpointe Dr Ste 400, Lake Oswego OR 97035
Telephone: (503) 719-6667
efrem@lawrencelegalfirm.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 1, 2022, this document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the docket, and that paper copies will be sent by U.S. mail, postage prepaid, to anyone indicated as non-registered participants.

DATED: July 1, 2022.                */s/ Brady Mertz*, OSB No. 970814
                                    685 Church St. NE, Salem, OR 97301
                                    Tel: 503-385-0121; brady@bradymertz.com
                                    Of Attorneys for Plaintiff